Filed 6/17/25  In re Ava O. CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re AVA O. et al., Persons Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and Respondent, v. KAREN O. et al., Defendants and Appellants. | G065049 (Super. Ct. Nos. 24DP1117, 24DP1118) O P I N I O N |

        Appeal from an order of the Superior Court of Orange County, Julie Anne Swain, Judge. Affirmed.

        Jacob I. Olson, under appointment by the Court of Appeal, for Defendant and Appellant Karen O.

Leslie A. Barry, under appointment by the Court of Appeal, for Defendant and Appellant Brandon O.

Leon J. Page, County Counsel, Debbie Torrez and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

\*      \*      \*

Karen O. (Mother) appeals from a dispositional order limiting her right to make educational decisions for her children.[1] We discern no error. Mother's unresolved mental health issues have caused her to suffer from distorted beliefs about her children's disciplinary and educational needs, and she has repeatedly threatened to withdraw them from school. The juvenile court did not abuse its discretion.

## FACTS

Given the limited issue on appeal, we provide only a brief summary of the proceedings in this case.

In September 2024, Ava (then age 15) and her older brother[2] told staff at their high school that they were afraid to leave school with Mother due to her mental health issues and history of trying to institutionalize them. Law enforcement detained Ava, her older brother, and their younger sister (then age 11), and the children were placed with their maternal aunt and uncle.

The children reported to the Orange County Social Services Agency that Mother believes they are "'deviant'" and has a history of

---

[1] Mother does not contest the juvenile court's jurisdictional findings or the order removing the children from her care. Brandon O. (Father) joins in Mother's appeal and raises no independent arguments.

[2] Ava's brother is now 18 years old and is not a subject of this appeal.

threatening to place them in residential treatment facilities, behavioral camps, and defiance programs. Ava recounted that on one occasion, Mother told her and her brother "to pack their things and be ready to leave in the morning." Her younger sister likewise expressed fear that Mother would show up at her school unannounced and try to take her away.

Ava and her brother further reported being "fearful" of Mother because she has had people from various programs visit the children at home to evaluate them for mental health issues. During one such assessment, someone put metal caps on the children's heads to measure their brain waves and find evidence of trauma. The children added that Mother constantly yells at them and acts "'erratically.'" They often lock themselves in their rooms to avoid her.

School staff at Ava's high school verified the children's reports about Mother's behavior misconceptions and her threats to withdraw them from school. The school's intervention specialist advised that Mother is delusional and falsely claims the children are running amok and are truant when they are not. She shared several voicemail recordings in which Mother said she would withdraw the children from school and put them on an airplane to Utah.

Mother refused to participate in the Agency's investigation. Father's whereabouts were unknown.

The Agency filed a Welfare and Institutions Code[3] section 300 petition based on Mother's unresolved mental health issues and erratic behavior and Father's failure to provide support, among other issues. The

_____

[3] All further statutory references are to this code.

juvenile court ordered the children detained and permitted Mother supervised visitation.

In the weeks that followed, Mother asked personnel school at the sister's school to assess her for special education, citing the results of brain mapping. The sister's teacher and her assistant principal advised the Agency that the child was doing well in school, was working at a proficient level in most academic areas, and did not need special education accommodations.

Later that fall, Mother began inpatient treatment in Los Angeles for various mental health issues. During her stay, at the Agency's request and over the parents' objections, the juvenile court temporarily limited Mother's education rights.

At the combined jurisdictional and dispositional hearing in November, Mother testified that she has brain damage and is receiving services for complex trauma, extreme anxiety, and major depression. She denied being anxious, aggressive, or paranoid. She also denied threatening to send the children to behavioral camps.

The assigned social worker testified that she had no information on Mother's mental health treatment, as Mother had refused to sign a release of information. Citing Mother's unwarranted requests for special education assessments, the children's concerns about Mother showing up at school and disenrolling them, and the school's recordings of Mother threatening as much, the social worker recommended limiting Mother's educational rights.

The juvenile court amended and sustained the petition, removed the children from parental custody, and continued to limit the parents' educational rights. In its written ruling, the court credited the children's statements about Mother's threats to send them to camps and disenroll them from school, and it found Mother's denials of those allegations "lacked

4

credibility." The court also noted Mother had failed to release information to the Agency about her treatment progress.

DISCUSSION

Mother claims she is able to look after the children's education and the juvenile court thus lacked sufficient justification to limit her educational rights. We disagree.

"Parents have a constitutionally protected liberty interest in directing their children's education." (*In re R.W.* (2009) 172 Cal.App.4th 1268, 1276 (*R.W.*).) However, after dependency jurisdiction is established, the juvenile court "may limit" the parents' control over the child, including the parent's "right . . . to make educational . . . decisions for the child." (§ 361, subd. (a)(1).) The restrictions in such an order should "not exceed those necessary to protect the child" and must be "based on the best interests of the child." (*Id.*, subds. (a)(1), (a)(6).) We review an order limiting a parent's educational rights for abuse of discretion, "bearing in mind '[t]he focus of dependency proceedings is on the child, not the parent.'" (*R.W.*, at p. 1277.)

We discern no abuse of discretion. School personnel confirmed the children's reports that Mother has repeatedly threatened to disenroll them from school and send them to behavioral camps; the fact that Mother has not yet attempted to do so is of no consequence. School personnel also confirmed Mother suffers from incorrect and paranoid perceptions about the children's behavior and educational needs. The limitations imposed on Mother's education rights are thus necessary to protect the children and are based on their best interests. The juvenile court acted well within its discretion in averting any disruption to their schooling.

5

## DISPOSITION

The order limiting the parents' educational rights is affirmed.


SCOTT, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


DELANEY, J.